No. 26,344.

CHARLES E. BURNHAM, *Appellee*, v. CORA A. BURNHAM, *Appellant*.

SYLLABUS BY THE COURT.

1. JUDGMENTS—*Opening or Vacating—Authority of Court During Same Term.*
Rule followed that within the same term at which a judgment is rendered
the trial court has absolute power over it, and may modify, alter, change
or vacate it in whole or in part; and no error can be predicated upon the
mere fact that at the conclusion of a trial the court first announced that
its decision would be in favor of defendant, but ultimately and within the
same term of court gave judgment in favor of plaintiff.

2. DIVORCE—*Domicile or Residence—Cross Complaint by Nonresident De-
fendant—Nonprejudicial Error.* Plaintiff, a resident of Cheyenne county
sued his wife, a resident of Colorado, for a divorce. Service was had by
publication, but the wife appeared and filed a cross action for a divorce
and alimony. On the evidence adduced, the trial court found both parties
so greatly at fault that a divorce might be granted to either or denied to
both. The court first announced its intention to grant a divorce to the
wife and to award her an attorney's fee and costs; but within the same
term, and on further reflection, the court became solicitous about the pos-
sible inconclusiveness of such a judgment to bind and protect the parties
and others concerned in their separate property rights which had been
defined by an antenuptial contract and approved by the court, and con-
cluded that for the best interests of all concerned the divorce should be
awarded to the resident plaintiff rather than the nonresident defendant.
Held, a judgment so rendered was not prejudicially erroneous.

Appeal from Cheyenne district court; WILLARD SIMMONS, judge. Opinion
filed January 9, 1926. Affirmed.

*Joel E. Stone* and *Joseph A. Biglin,* both of Denver, Colo., for the appel-
lant.

*John L. Finley,* of St. Francis, for the appellee; *T. F. Garver,* of Topeka,
of counsel.

The opinion of the court was delivered by

DAWSON, J.: This was an action for a divorce by Charles E.
Burnham, of Cheyenne county, against his wife, Cora A. Burnham,
a resident of Colorado, and a cross action by the wife for a divorce
and alimony.

Both parties had been married before. By his first wife, with
whom plaintiff had lived for thirty years, he had six children, two

Appeal and Error, 3 C. J. pp. 975 n. 15, 976 n. 27, 984 n. 12; 4 C. J. pp. 1167
n. 94, 1176 n. 46.   Divorce, 19 C. J. pp. 27 n. 54, 165 n. 94, 195 n. 40.   Judgments,
34 C. J. p. 207 n. 5; 15 R. C. L. 677.

of whom were grown and married. The younger three, ranging from nine to seventeen years old, resided with plaintiff. The defendant had several children by a former husband, from whom she had been divorced some ten years before.

The litigants first met in Denver, in January, 1921. Plaintiff employed defendant to act as his housekeeper in St. Francis. She served in that capacity for six months. Then they agreed to marry, and as a preliminary thereto they executed an antenuptial contract, in which they renounced for themselves, and those who might otherwise claim under them, all rights in their respective properties.

For about a year after their marriage the litigants got along together fairly well. After that came discontent and discord. Defendant would not willingly stay at home and look after plaintiff's home and children. They frequently quarreled. In a dispute over a social game of cards she called him a liar. He says she called him a damned liar, and he thrust her out of doors. She admitted the use of the epithet, but not its accompanying adjective, and says she seldom used an oath. Plaintiff testified that their domestic situation went from bad to worse; it was "living in a little hell a great deal of the time." Defendant testified that plaintiff had a terrible temper; that he took such offense at her asking him what he had given his sister-in-law as a Christmas present that he absented himself from home. "He flew into a rage on many occasions over little things." "This treatment by Mr. Burnham of me during our married life has made me suffer greatly and has rendered me nervous and caused me a great deal of worry."

Judgment was entered granting a divorce to the husband; the antenuptial agreement of the parties touching their respective properties was upheld; and the costs, including defendant's attorney's fee of $250, were taxed against the plaintiff.

This judgment was rendered on December 16, 1924, and on December 18 the defendant served notice of appeal and filed the notice with the clerk of the district court on December 20, 1924. A motion for a new trial had been filed December 16, but was not ruled on by the trial court until December 23, 1924, and no appeal has been taken therefrom.

In appellant's assignment of errors defendant chiefly urges matters not reviewable for want of an appeal from the trial court's ruling on the motion for a new trial. Defendant's counsel appreciate

this situation, but hope this court may find a way to review the whole record nevertheless. There is, indeed, nothing to prevent us ·from a painstaking perusal of the record, and this perusal has been made; but our appellate ·jurisdiction is regulated, limited and defined by statute, and we must conform thereto. Errors involved in the trial court's determination of issues of fact and in rulings on the admissibility of evidence and similar so-called trial errors are reviewable on appeal only where the trial court has first been, given an opportunity to reconsider them itself pursuant to a timely motion for a new trial. (*Harder v. Power Co.*, 93 Kan. 177, 148 Pac. 603.) Want of an appeal from a ruling on a motion for a new trial is equivalent to acquiescence in that ruling. (*City of Atchison v. Byrnes*, 22 Kan. 65, syl. ¶ 2.) However, a failure to appeal from such a ruling is not altogether fatal to an appellate review, but its scope is greatly restricted thereby. (*Buckwalter v. Henrion*, 111 Kan. 781, 208 Pac. 645.) So the case at bar comes to us as if the appellant were altogether satisfied with the trial court's determination of the facts, and was merely complaining of the judgment entered pursuant thereto. (*McLeod v. Palmer*, 96 Kan. 159, 162, syl. ¶ 4, 150 Pac. 535.) Here the trial court made extended findings of fact which settled the substantial issues in the case, and these findings formed the basis of the judgment and controlled it. (*Filter Co. v. Bottling Co.*, 89 Kan. 645, 132 Pac. 180; *Hurt v. Stout*, 105 Kan. 54, 181 Pac. 623; *Murray v. Close*, 118 Kan. 430, 234 Pac. 60.)

Accepting these findings of fact as conclusive, what prejudicial error can be found in the judgment? The findings are too long for reproduction, but in effect they declare that both parties had been so much at fault that a divorce might have been denied to either or both; that they never could peaceably live together and might as well be divorced; that on first reflection the trial court believed the husband had been the greater sinner and that the wife should be given the divorce, together with her costs and attorney's fee; that the antenuptial contract was fair and should be upheld and that no alimony should be allowed to defendant; but on further reflection the trial court considered the fact that the wife was a nonresident, and feared that a judgment granting the divorce to her might be inconclusive and ·might afterwards render uncertain their titles to their respective properties, and that the safer and wiser course for all concerned would be that the divorce be granted to the husband, but with costs and an attorney's fee in favor of the wife.

Counsel for defendant challenge the good faith of the trial judge in changing his judgment from that first intimated. Such complaint is ill-founded. The record clearly shows that it was out of abundance of caution and to give such a judgment as would best serve the lasting interests of the litigants and their heirs and assigns that the trial court finally determined to grant the divorce to the resident litigant rather than the nonresident litigant. The trial court's original judgment was only tentative. It was changed the same day. Furthermore, at any time within the same term the court had absolute control over the judgment, and if at any time within that term the court had reached the conclusion that its first judgment was hasty, improvident, inequitable or erroneous, it would have been its moral duty, perhaps its bounden duty, to vacate or otherwise correct it. (*Sylvester v. Riebolt,* 100 Kan. 245, 164 Pac. 176; *The State, ex rel., v. Langmade,* 101 Kan. 814, 168 Pac. 847; *Karr v. Moffett,* 105 Kan. 692, 694, 185 Pac. 890.) In *Shamel v. Motors Co.,* 116 Kan. 5, 225 Pac. 1031, the plaintiff had obtained judgment against defendant on publication service and by default. The judgment was entered on April 8, 1922, an order of sale was issued April 19, 1922, and defendant's attached property was sold thereunder. On July 22, 1922, defendant moved to vacate the judgment. On August 26, 1922, the judgment was vacated. All these proceedings were had at the same term of court. This court said:

"It is not exceptional for courts to change rulings, correct errors, orders, and even set aside judgments, during the term at which they are made and entered. For this purpose the term is regarded as only one day, and during the term within which an order is made it is, as has been expressed, 'within the breast of the court,' and during the term, whether long or short, it has absolute control of its rulings, orders and judgments." (p. 6.)

In this case the findings of fact recite at great length the delinquencies of both parties. The shortcomings of defendant, in substance, were that she was sullen, angry and complaining; that she made of plaintiff's home "a little hell on earth"; that she grossly neglected her wifely duty to care for plaintiff's home and children, and that she had been guilty of extreme cruelty to plaintiff, and eventually left him, on the advice of her adult son.

It cannot be said that a judgment granting a divorce to plaintiff on this abridgment of the findings was erroneous, although the wrongs suffered by the defendant might also have justified a judg-

ment awarding the divorce to her if the trial court had seen fit to grant it.

We are disposed to agree with defendant's counsel, that where, as here, the trial court had full jurisdiction of the cause and of the parties, on the issues joined herein and by their general appearance in person and by counsel, the fact that the defendant was a nonresident was of no significance, and a divorce, as well as any other relief justified by the issues and the evidence, could have been accorded to her. (*Watkins v. Watkins,* 135 Mass. 83, and citations; 19 C. J. 27; 9. R. C. L. 404; 7 R. C. L. 1041, 1043 *et seq.;* and see *Meador v. Manlove,* 97 Kan. 706, and citations, 156 Pac. 731.) But here the question is merely academic, for no prejudicial error in the judgment can be definitely and conclusively traced to the trial court's ultimate decision to render such a judgment as would in its opinion effectively bind the parties and all who claimed property rights under them.

A careful perusal of defendant's abstract and brief arouses no misgiving that justice may have miscarried in this action. Both parties wanted a divorce. In substance they have gotten what they wanted. While the trial court was first inclined to give it to the woman, on further reflection and in the exercise of its discretion and in the belief that it would be for the best interest of all concerned, it concluded to give the divorce to the man, but required him to pay the costs and attorney's fee for the woman's lawyers. In view of the situation of the parties, no substantial prejudice to defendant is discernible because the judgment was technically entered in favor of the plaintiff. (R. S. 60-3317.) The trial court's findings of fact were sufficient to justify a divorce to either party or to neither party, and there is no prejudicial error in the net result.

The judgment is affirmed.